## OSAGE COUNTY MOTOR CO. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 8, 1929.

No. 8440.

Charles B. Wilson, Jr., of Pawhuska, Okl. (H. R. Duncan, of Pawhuska, Okl., on the brief), for appellant.

M. E. Michaelson, of Bartlesville, Okl., amicus curiæ.

Louis N. Stivers, Asst. U. S. Atty., and John M. Goldesberry, U. S. Atty., both of Tulsa, Okl.

Before LEWIS and VAN VALKEN-BURGH, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. On February 4, 1926, the day following his becoming of age, Roosevelt Pappin, an Osage Indian of 9/64 Indian blood, and fully enrolled as such, executed five promissory notes aggregating $5,649.70, payable to the Osage Motor Company, defendant below, appellant here, and secured them by mortgages on his unrestricted allotted lands. No statutory certificate of competency had ever been issued to Pappin, and these contracts for debt, evidenced by the notes, were never approved by the Secretary of the Interior.

The government brings this suit on behalf of Pappin to have the notes and mortgages canceled and set aside, alleging that they are void under that part of section 6 of the Act of Congress February 27, 1925, being chapter 359 (43 Stats. at L. 1008; 25 USCA § 331, note), reading as follows:

"No contract for debt hereafter made with a member of the Osage Tribe of Indians not having a certificate of competency, shall have any validity, unless approved by the Secretary of the Interior."

No fraud or inequitable conduct on the part of the motor company is charged.

A motion to dismiss the complaint was filed and overruled. The defendant below, appellant here, elected to stand on its motion. Judgment was entered for the complainant, holding the notes null and void, and decreeing the cancellation of the mortgages. Defendant appeals.

Two questions are presented:

First. Does the provision quoted apply to an Osage Indian of less than one-half degree Indian blood, whose allotted lands are alienable.

Secondly. If it does apply, is the act constitutional.

First, appellant objects to what it denominates a "literal interpretation" of the statute, arguing that this particular clause must be read and construed in connection with all other parts of the framework of Indian statutory law, and that, when so read, Pappin does not come within its operation, being an adult member of the Osage Tribe of less than one-half Indian blood.

To go back a little into the statutes relating to this tribe, we find that the Osage allotment Act of June 28, 1906 (34 Stat. 539), gave each member of the tribe the right to make three selections of land, one of which he was required to designate as a homestead, which remained inalienable until otherwise provided by Congress. The other two selections were designated as surplus lands, inalienable for 25 years. The act also provided that the Secretary of the Interior in his discretion, and upon petition of any adult

member of the tribe, might issue to such member a certificate of competency, the intent being to enable a member of the tribe, who could satisfy the Secretary of the Interior that he was fully competent and capable of transacting his own individual affairs, to freely sell any part of his surplus land. This is the only act authorizing the issuance of certificates of competency to Osage Indians.

Section 3 of the Act of March 3, 1921 (41 Stat. 1250), declared all members of the Osage Tribe to be citizens of the United States, and removed as to all adult Osage Indians of less than one-half Indian blood all restrictions against alienation of their allotment selections, both surplus and homestead. The act provided, however, that this should not affect their interest in tribal property, nor control of the United States over such property as is now, or may hereafter be, provided by law. Congress, by thus removing all restrictions on the alienation of allotted lands of Indians of less than one-half Indian blood, rendered inoperative as to Indians of such class that part of the allotment act referred to, authorizing the issuance of certificates of competency as a condition precedent to future alienation by him of any part of his allotted lands.

From this appellant argues that section 3 of the 1921 act amounted to a blank certificate of competency in behalf of each member therein included. We do not so construe the language. It removes only restrictions against alienation of their allotted selections, etc.; that is, it is confined to a specific object, and is not an attempt to remove all restrictions of whatever nature or kind.

At the time of the passage of the act (March 3, 1921), and as a result of previous legislation, the Indians of this tribe had become classified into those who held certificates, and those who had been denied the same. This condition obtained at the time of the enactment of the act under discussion. Other language in the section clearly shows the intent of Congress to retain control over the persons and property of these Indians. Furthermore, the Act of February 27, 1925, when compared with the previous acts, discloses no revolutionary change in the Indian policy of the federal government. All the statutes that we are discussing are by their very terms amendatory of their predecessors, starting with the Act of June 28, 1906, and, though they may differ in detail, they all disclose the intent of Congress to exercise its unquestioned plenary power over the Indians. They all contain references to cer-

tificates of competency, and make restrictions and classifications depending on that, as well as other factors. It is clearly disclosed that Congress at the time was fully aware of the existence of the outstanding certificates of competency, and supports the government's argument that the Act of February 27, 1925 was passed in the light of certificates already issued, and not in anticipation of certificates to be issued. But whether the act of 1921 repealed as to members of the Osage Tribe of less than one-half blood that part of the act authorizing the issuance of certificates of competency we do not have to decide, for, admitting that the necessity thereof no longer exists as to this class, it does not follow that it was the intent of Congress to make such Indians competent for all purposes, or to free them entirely from governmental control as to their persons or property.

This legislation was passed an appreciable time subsequent to the acts which appellant says modify or interpret it; so we may assume that Congress had the previous legislation and the possible results that counsel refer to in mind. It may be, as appellant contends, that the act prevents an Indian of the class indicated from becoming indebted for the bare necessities of life, or contracting for help on his farm, but such a situation is not presented by this record, and, if it were, it would not be material. Such arguments are for Congress and not the courts.

The contract in question could, under the statute, have been presented to the Secretary of the Interior for his approval, irrespective of whether Pappin held a certificate of competency or not.

It clearly appears that the language involved on this appeal is wholly consistent with the previous legislation on the same subject, and marks no new policy in the government's attitude towards its wards. The appeal might, very properly, however, be disposed of by stating that language as clear as that used by Congress in this instance does not require or permit of judicial interpretation, and it is not within our province so to do.

Second, appellant contends that section 6 of the 1925 act is unconstitutional under the Fifth Amendment to the Federal Constitution, as interfering with the right to contract; the Indian, Pappin, being a citizen of the United States. We cannot take this proposition seriously. The right to contract about one's affairs is a part of the liberty of the individual protected by the

Fifth Amendment, but, as said in Adkins v. Children's Hospital, 261 U. S. 546, 43 S. Ct. 397 (67 L. Ed. 785, 24 A. L. R. 1238):

"There is, of course, no such thing as absolute freedom of contract. It is subject to a great variety of restraints."

And in U. S. v. Nice, 241 U. S. 591, 36 S. Ct. 696, 60 L. Ed. 1192, the Supreme Court reiterated the oft-repeated statement of that court that the Indian tribes are the wards of the nation, from which relation arises the duty of protection, and with it the power, and "citizenship is not incompatible with tribal existence or continued guardianship, and so may be conferred without completely emancipating the Indians or placing them beyond the reach of congressional regulations adopted for their protection."

The decree of the lower court is affirmed.